**FILED**

JUL 8 0 2008
JUL 29 2008
MICHAEL W. DOBBINS
CLERK U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ELAINE ABRAHAMSON and
BRUCE ABRAHAMSON

    Plaintiffs

    v.

CITIBANK, NORTH AMERICA

    Defendant

**08CV4299**
**JUDGE ZAGEL**
**MAG. JUDGE COX**

)
)   **JURY DEMANDED**
)
)
)

### VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES FROM RACKETEERING, CONSPIRACY TO ENGAGE IN A PATTERN OF RACKETEERING ACTIVITY AND RELATED CLAIMS

Plaintiffs **ELAINE ABRAHAMSON** and **BRUCE ABRAHAMSON** each individually and in their official capacities as Trustees of the BMA Trust under agreement dated ("u/a/d") February 18th, 2008 ("Plaintiffs") complain against defendant **CITIBANK, NORTH AMERICA** ("Citibank") as follows:

### NATURE OF THE ACTON

1. This action arises from Defendant's flagrant failure to comply with responsibilities to adequately and properly maintain and keep secure moneys in the approximate amount of $25,000.00 placed on deposit with defendant into a Nevada irrevocable spendthrift Trust account entitled "**BMA Trust u/a/d dated February 18th, 2008 Elaine Abrahamson and Bruce Abrahamson Trustees**" ("Nevada Spendthrift Trust Account").

2. Defendant enticed Plaintiffs to arrange for deposit of moneys into the foregoing Nevada Spendthrift Trust Account and into the defendant Bank with the Defendant's promise to

1

Plaintiffs that they would after three months of said deposit of money along with a few requisite automatic online bill payments, and in exchange therefore, that Plaintiffs would then be eligible for, and would receive thereafter; two complimentary roundtrip plane ticket vouchures to anywhere in the United States valid on most domestic airline carriers operating in the U.S.
SEE: EXHIBIT "A" which is account title.

3. Furthermore, the defendant during the course of prior years represented that all checks ordered by Plaintiffs for their Citigold linked accounts would be provided to Plaintiffs free of charge. Instead unilaterally through the wires, wire fraud and via the U.S. Mail, in violation of 18 USC § 1961 section 1341 (relating to mail fraud), and section 1343 (relating to wire fraud), and section 1344 (relating to financial institution fraud); the defendant debited Plaintiffs linked bank accounts without explanation on several separate occasions.

4. Defendant most recently debited the Nevada spendthrift Trust account in the amount of $21,346.20 on or about July, 7th, 2008 without Plaintiffs consent, direction, or knowledge and contrary to agreement without any validity. The most recent debiture by defendant from the Nevada spendthrift Trust account was done under guise of "*color of law*" by defendant unilaterally debiting therefrom, via the wires from the Nevada spendthrift Trust account, without valid explanation provided to Plaintiffs. SEE EXHIBIT "B" which are debitures of Nevada spendthrift Trust account on July 7, 2008.

5. Defendant's representatives thereafter intentionally refused to discuss the matter whatsoever with Plaintiffs on multiple separate occasions attempted by Plaintiffs.

6. Plaintiffs seek compensatory damages for recovery of unlawfully debited moneys from the Nevada spendthrift Trust account together with **treble damages** for defendant's

2

intentional violation of civil RICO statutes for the moneys unlawfully debited as well as for compensatory monetary value of the two round-trip airline tickets that were promised by defendant to be provided to Plaintiffs - prior to defendant's breach of its fiduciary responsibility to safeguard the moneys on deposit in the Nevada spendthrift Trust account.  Plaintiffs are and continue to be  Trustees of said account maintained and under the control of defendant.

7.  This is a civil action for RICO remedies authorized by the federal statutes at 18 U.S.C.§ 1961 *et seq.*; for declaratory and injunctive relief; for actual, consequential and exemplary damages; and for all other relief which this Honorable Court deems just and proper under all circumstances which have occasioned this COMPLAINT. See 18 U.S.C. §1964(a) and (c) ("Civil RICO").

### Parties

8.  Plaintiff, Elaine Abrahamson, is an individual whose legal residence is in Lake County, Indiana.  Elaine Abrahamson is a Trustee of the Nevada spendthrift Trust.

9.  Plaintiff, Bruce Abrahamson, is an individual whose legal residence is in Cook County, Illinois. Bruce Abrahamson is a Trustee of the Nevada spendthrift Trust.

10.  Citibank North America is a corporate entity that on information and belief is incorporated and domiciled in the state of Delaware and is doing business in the state of Illinois.

### Jurisdiction and Venue

11.     This Court has diversity jurisdiction over this matter pursuant to 28 USC § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs and is between citizens of different states.

12.    Defendant Citibank North America ("Citibank") is subject to the jurisdiction of the Court because it conducts business within this District.

13.    Venue is proper in the Northern District of Illinois pursuant to 28 USC § 1391 (b) because Defendant's actions have caused damage to Plaintiffs, and Plaintiff Bruce Abrahamson, resides in this District.

14,    This Court has original jurisdiction pursuant to the civil RICO remedies at 18 U.S.C. § 1964.

### Factual Background

15.    The primary cause of this action is a *pattern of racketeering activity* across State lines, and a conspiracy to engage in *racketeering activity* involving RICO predicate acts during the past approximately three calendar years.

16.    Predicate acts alleged herein are interstate transportation of stolen property.  See 18 U.S.C. § 2315 (sale or receipt of stolen moneys) and, in violation of 18 USC § 1961 section 1341 (relating to fraud via the U.S. Mail), in violation of 18 USC § 1961 section 1343 (wire fraud) and in violation of 18 USC § 1961 section 1343 (bank fraud).

17.    Recent RICO predicate acts, although *appearing* to be isolated events, were actually part of the overall conspiracy and *pattern of racketeering activity* alleged herein, *e.g.* mail fraud and wire fraud. See 18 U.S.C. §§ 1341 and 1343, respectively.

18.    An objective of the racketeering has been to inflict sustained economic hardship upon Plaintiffs, with the intent of impairing, obstructing, preventing and discouraging Plaintiffs from having control of funds ("funds") that were caused to be deposited by Plaintiffs under guise of defendant's *false pretenses*l into a Nevada spendthrift Trust account. Said funds were thought

4

to be in safekeeping with the defendant.   Instead, on or about July 7th, 2008 the amount of

**$21,346.20** was unilaterally withdrawn by wire fraud and mail fraud by defendant from the

Nevada spendthrift Trust account and thereby precluded Plaintiffs from receiving benefits to be

derived from the funds having been thought to be *securely* on deposit with the defendant under

the defendant's false pretenses communicated to Plaintiffs.   Among the benefits Plaintiffs have

been unduly deprived of by defendant's deceptions is the security of said funds for the

beneficiaries of the funds.   Defendant's lured Plaintiffs under false pretenses to deposit said

funds in the amount of approximately $25,000.00 (in the Nevada spendthrift Trust account) and

promised Plantiffs thereafter in three months that they would receive two free round-trip airline

vouchers to be awarded to Plaintiffs to fly anywhere in the U.S. on most major U.S. Airline

carriers.   Instead defendant did deprive Plaintiffs' benefit of the Nevada Trust account funds on

deposit with defendant without explanation, refusing to communicate with Plaintiffs, and

intentionally causing Plaintiffs severe emotional pecuniary distress.

**COUNT ONE:**

Acquisition and Maintenance of an Interest in and Control of

an *Enterprise* Engaged in a *Pattern of Racketeering Activity*:

18 U.S.C. §§ 1961(5), 1962(b)

19.      Plaintiffs now re-alleges each and every allegation as set forth above, and hereby

incorporate same by reference, as if all were set forth fully herein.

20.      At various times and places partially enumerated in Plaintiffs' *documentary*

*material*, Defendant did acquire and/or maintain, directly or indirectly, an interest in or control of

a RICO *enterprise* of individuals who were associated in fact and who did engage in, and whose

5

activities did affect, interstate and foreign commerce, all in violation of 18 U.S.C. § 1961(4), (5), (9), and 1962(b).

21.    Plaintiffs further allege that Defendant did commit two (2) or more of the offenses itemized above in a manner which they calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(b) *supra*.

22.    *Defendant or Respondeat superior* (principal is liable for agents' misconduct: knowledge of, participation in, and benefit from a RICO enterprise) did cause the RICO violations as stated..

## COUNT TWO;

Conduct and Participation in a RICO *Enterprise*

through a *Pattern of Racketeering Activity*:

18 U.S.C. §§ 1961(5), 1962(c)

23.    Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

24.    At various times and places partially enumerated in Plaintiffs' *documentary material* and as outlined above, Defendant did associate with a RICO *enterprise* of individuals who were associated in fact and who engaged in, and whose activities did affect, interstate and foreign commerce.

25.    Likewise, Defendant did conduct and/or participate, either directly or indirectly, in the conduct of the affairs of said RICO *enterprise* through a *pattern of racketeering activity*, all in violation of 18 U.S.C. §§ 1961(4), (5), (9), and 1962(c).

6

26.    Defendant did cooperate jointly and severally in the commission of two (2) or more of the RICO predicate acts that are itemized in the RICO laws at 18 U.S.C. §§ 1961(1)(A) and (B), and did so in violation of the RICO law at 18 U.S.C. 1962(c) (Prohibited activities).

27.    Plaintiffs further allege that Defendant did commit two (2) or more of the offenses itemized above in a manner which it calculated and premeditated intentionally to threaten continuity, *i.e.* a continuing threat of their respective *racketeering activities*, also in violation of the RICO law at 18 U.S.C. 1962(c) *supra*.

28.    *Defendant or Respondeat superior* (principal is liable for agents' misconduct: knowledge of, participation in, and benefit from a RICO enterprise) did cause the RICO violations as stated..

## COUNT THREE:

Conspiracy to Engage in a

*Pattern of Racketeering Activity*:

18 U.S.C. §§ 1961(5), 1962(d)

29.    Plaintiffs now re-allege each and every allegation as set forth above, and hereby incorporates same by reference, as if all were set forth fully herein.

30.    At various times and places partially enumerated in Plaintiff's *documentary material*, all Defendants did conspire to acquire and maintain an interest in a RICO *enterprise* engaged in a *pattern of racketeering activity*, in violation of 18 U.S.C. § 1962(b) and (d).

31.    At various times and places partially enumerated in Plaintiffs' *documentary material*, and as captioned above Defendant did also conspire to conduct and participate in said

7

RICO *enterprise* through a *pattern of racketeering activity*, in violation of 18 U.S.C. § 1962(c) and (d).  See also 18 U.S.C. § 1961(4), (5) and (9).

### RELIEF REQUESTED

**WHEREFORE**, pursuant to the statutes at 18 U.S.C. 1964(a) and (c), Plaintiff requests judgment against Defendant on COUNTS ONE, TWO, AND THREE as follows:

1.   Find that Defendant did control and maintain, both directly and indirectly, an interest in and/or control of a RICO *enterprise* of *persons* and who were associated in fact, all of whom engaged in, and whose activities did affect, interstate and foreign commerce in violation of 18 U.S.C. 1962(b) (Prohibited activities).

2.   That the Defendant and all of its directors, officers, employees, agents, servants and all other *persons* in active concert or in participation with them, be enjoined *temporarily INSTANTER* during pendency of this action, and *permanently* thereafter, from committing any more predicate acts in furtherance of the RICO *enterprise* alleged in COUNTS ONE, TWO, AND THREE *supra* and Order the defendant to return all moneys debited from the Nevada spendthrift Trust account by way of a Certified Cashier's Check in the amount of **$21,346.20** made payable to the Nevada spendthrift Trust and be delivered by defendant by courrier instanter to one of Plaintiffs' addresses as to be specified by Plaintiffs to the Court.

3.   That Defendant be required to account for all gains, profits, and advantages derived from their several acts of *racketeering activity* in violation of 18 U.S.C. 1962(b) and from all other violation(s) of applicable State and federal law(s).

4.   That judgment be entered for Plaintiffs and against Defendant for Plaintiffs' actual damages, pecuniary damages, and for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(b).

5. That Defendant pay to Plaintiff treble (triple) damages, under authority of 18 U.S.C. 1964(c), for any gains, profits, or advantages attributable to all violations of 18 U.S.C. 1962(b) including but not limited to the monetary value to two round-trip airfare vouchures to anywhere in the U.S. by a major U.S. Airline such as American Airlines or United Airlines and for accrued interest at the current annual rate of interest on all funds stolen by defendant..

6. That Defendant pay to Plaintiffs all damages sustained by Plaintiff in consequence of Defendants' several violations of 18 U.S.C. 1962(b) including but not limited to pecuniary harm.

7. That Defendant pay to Plaintiffs costs of the lawsuit incurred herein including, but not limited to, all necessary research, all non-judicial enforcement and all reasonable attorneys' fees and costs associated with filing this lawsuit.

8. That Plaintiffs have such other and further relief as this Court deems just and proper, under the circumstances of this action.

## JURY DEMAND

Plaintiffs hereby demand trial by jury on all issues triable to a jury lawfully convened.

## LIST OF EXHIBITS

**EXHIBIT A**   is Title of Nevada spendthrift Trust Account.

**EXHIBIT B**   is debit itemization of Nevada spendthrift Trust Account.

**EXHIBIT C**   is BMA Trust Document under agreement dated February 18, 2008.

RESPECTFULLY SUBMITTED BY:

_Elaine Abrahamson_ and

ELAINE ABRAHAMSON, Plaintiff
P.O. Box 3443
Munster, IN. 46321-3443

Phone #: (312) 943-7777

_Bruce Abrahamson_

BRUCE ABRAHAMSON, Plaintiff
175 E. Delaware Place, Suite #8510
Chicago, IL. 60611

Phone #: (312) 943-7777

9

## VERIFICATION

I, ELAINE ABRAHAMSON, Plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, within the U.S., that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1).

*Elaine Abrahamson*

ELAINE ABRAHAMSON, AFFIANT

## VERIFICATION

I, BRUCE ABRAHAMSON, Plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, within the U.S., that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1),

*Bruce Abrahamson*

BRUCE ABRAHAMSON,  AFFIANT

## CERTIFICATE OF SERVICE

I, Bruce Abrahamson, hereby certify that I served a true, complete and correct copy of the above listed documents by depositing same via 1st Class Mail Return Receipt requested with requisite postage affixed and for delivery with the U.S. Post Office at Ft.Dearborn Station, Chicago, IL. 60604 with a completed Summons before 5:00 p.m. on 07/29/08 upon the defendant at the address of: TO: Darryl P. Hendricks, Central Division Manager, CITIBANK, 500 W. Madison St., 5th Floor, Chicago, IL. 60661.

By: *Bruce Abrahamson*

Bruce Abrahamson

Av.Citibank.Complaint.072808

10



**APRIL 2, 2008**

CITIBANK, N.A.
RIVER NORTH
400 NORTH CLARK ST
CHICAGO, IL 60610

BRUCE M. ABRAHAMSON
175 E DELAWARE PL APT# 8510
CHICAGO, IL 60611-7750

## CITI PRODUCTS OPENED/ APPLIED FOR TODAY - EFFECTIVE DATE*: APRIL 2, 2008

### RELATIONSHIP SUMMARY

| | |
|---|---|
| Checking | NA |
| Savings | $25,000.00 |
| Retirement (FDIC insured) | NA |
| Loans/Lines | NA |
| Credit Cards | NA |

## Citibank
**Banking Package: Citibank Account**

| Checking Option | Account Number | | Interest Rate** | Annual Percentage Yield** | Balance*** |
|---|---|---|---|---|---|
| | | | | | |

| Savings | Account Number | Maturity | Interest Rate** | Annual Percentage Yield** | Balance*** |
|---|---|---|---|---|---|
| Citibank(R) Money Market Plus<br>BRUCE M. ABRAHAMSON<br>ATF BMA TRUST<br>DATED 02/18/2008 | 920337096 | NA | 1.00% | 1.01% | $25,000.00 |

| Retirement | Account Number | Status | Maturity | Interest Rate** | Annual Percentage Yield** | Balance*** |
|---|---|---|---|---|---|---|
| | | | | | | |

| Loans/Lines | | Status | |
|---|---|---|---|
| | | | |

| Credit Cards (Issued by Citibank(South Dakota),N.A.) | | Status | |
|---|---|---|---|
| | | | |

| Total Checking, Savings, Retirement | $25,000.00*** |
|---|---|

You can access your accounts through **www.citibankonline.com**. For your linked Smith Barney brokerage account, click on the "Investments" button. You can see your account information, pay bills, transfer funds between linked accounts, even plan for your future using the available financial planning tools.No special software is required and you dont have to register. Just connect to the Internet, then go to **www.citibankonline.com** and sign on using your Citibank® Banking Card number, your PIN and the number of one of your bank accounts. Have any questions? Call us at 1-800-374-9700.

Citibank, N.A. provides deposit and non-margin lending services.

Citibank, N.A. is the trustee of your IRAs and Keogh Plans. Retirement Plan IMMAs, CDs and Day-to-Day Savings are deposits of Citibank, N.A.

Credit cards are issued by Citibank (South Dakota), N.A.

* The "Effective Date" of an account opening applies to a Citibank, N.A. non-retirement deposit account only. The opening date for a loan or line of credit, credit card, Smith Barney brokerage account or a retirement account (IRA or Keogh) may be later than the Effective Date listed above and will be confirmed to you in a separate written notice.

## EXHIBIT A

1 of 2



APRIL 2, 2008

CITIBANK, N.A.
RIVER NORTH
400 NORTH CLARK ST
CHICAGO, IL 60610

BRUCE M. ABRAHAMSON
175 E DELAWARE PL APT# 8510
CHICAGO, IL 60611-7750

** For current Interest Rates and Annual Yields, refer to the *Consumer Deposit Solution-Annual Percentage Yield* or *Annual Percentage Yield - IRA/Keogh Products* rate sheet, as applicable.

*** The amount of any "Balance" for an account is not a record of a deposit; it only describes the initial deposit you stated would be made into the account. As noted in your Client Manual, all deposits must be verified by bank personnel and, when credited, appear on your account statement.

© 2007 Citigroup Inc. Citibank, N.A. and Arc Design is a registered service mark of Citigroup Inc.

**EXHIBIT A**



**Citibank® Money Market Plus: 920337096**

$ 0.02        on deposit

$ 0.02        available now

$ 74.42       interest earned

Account summary



Search for specific activity

**Click a column heading below to sort transactions.**

| Date | Description | | Debits | Credits | End-of-Day Balance |
|------|-------------|--|--------|---------|--------------------|

EXHIBIT B

| 07-07 | FEE-LEGAL SVC Jul 03 19:21 | $ 125.00 | $ 0.02 |

1680 ST HWY 211, CHICAGO, IL

| 07-07 | ONLINE - TRANSFER TO Ult Money Jul 06 15:45 2587 | $ 1,162.60 |

ONLINE Reference# 797

| 07-07 | WITHDRAWAL Jul 03 19:21 | $ 21,221.20 |

**EXHIBIT  B**

# THE BMA TRUST

### Dated February, _18_ 2008

**OFFICIAL STAMP & DOCUMENT of the**
**BMA TRUST dated** _02_ / _18_ / 20 _08_
**BRUCE M. ABRAHAMSON as TRUSTEE**
**AUTHORIZED SIGNATURE(S):**
**SIGNED:** _Bruce Michael Abrahamson_
_Elaine F. Abrahamson_

Prepared by
**JEFFREY BURR, LTD.**
2600 Paseo Verde Parkway
Henderson, NV 89074

## EXHIBIT C

**Table of Contents**

ARTICLE 1 ......................................................................................................4
ADDITIONS TO TRUST ...............................................................................4

ARTICLE 2 ......................................................................................................5
BENEFICIARIES AND TRUST NAME .......................................................5

ARTICLE 3 ......................................................................................................5
DISTRIBUTION OF INCOME AND PRINCIPAL ......................................5
DURING THE LIFE OF THE TRUSTOR .....................................................5

ARTICLE 4 ......................................................................................................8
DISTRIBUTION AND ADMINISTRATION.................................................8
AFTER THE DEATH OF THE TRUSTOR.....................................................8

ARTICLE 5 ....................................................................................................10
TRUSTEE'S DISCRETION ON DISTRIBUTION ......................................10
TO PRIMARY BENEFICIARIES .................................................................10

ARTICLE 6 ....................................................................................................11
DISTRIBUTIONS IN KIND..........................................................................11

ARTICLE 7 ....................................................................................................11
IRREVOCABLE TRUST ..............................................................................11

ARTICLE 8 ....................................................................................................12
ADDITIONAL PROPERTIES.......................................................................12

ARTICLE 9 ....................................................................................................12
INCOMPETENCY OF BENEFICIARIES....................................................12

ARTICLE 10 ..................................................................................................12
PROVISIONS RELATING TO TRUSTEESHIP ..........................................12

ARTICLE 11 ..................................................................................................18
TRUST CONSULTANT'S LIMITED POWER OF AMENDMENT .............18

ARTICLE 12 ..................................................................................................20
TRUSTEE POWERS AND LIMITATIONS ..................................................20

ARTICLE 13 ..................................................................................................31
ELECTING SMALL BUSINESS AND........................................................31
QUALIFIED SUBCHAPTER S TRUSTS ....................................................31

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated _02_ / _18_ / 20_08_
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce M. Abrahamson_ _Elaine F. Abrahamson_

**ARTICLE 14**................................................................................................................35
**MERGER OF TRUSTS**................................................................................................35

**ARTICLE 15**................................................................................................................35
**PURPOSES OF TRUST**............................................................................................35

**ARTICLE 16**................................................................................................................36
**GENERAL PROVISIONS**.........................................................................................36

**OFFICIAL STAMP & DOCUMENT of the**
**BMA TRUST dated** _02_ / _18_ / 20 _08_
**BRUCE M. ABRAHAMSON as TRUSTEE**
**AUTHORIZED SIGNATURE(S):** _Bruce Michael Abrahamson_
**SIGNED:** _Bruce Michael Abrahamson_
      _Elaine F. Abrahamson_

3

# Trust Agreement

## OF THE

## BMA TRUST

THIS TRUST AGREEMENT made this _18_ day of February, 2008, by and between BRUCE M. ABRAHAMSON, a resident of Cook County, Illinois (hereinafter sometimes referred to as "Trustor" or "Grantor"), BRUCE M. ABRAHAMSON (hereinafter referred to as "Investment Trustee"), ELAINE F. ABRAHAMSON (hereinafter referred to as "Distribution Trustee"), and DAVID M. GRANT of JEFFREY L. BURR, LTD. (hereinafter referred to as "Special Administrative Trustee"). For purposes of this Trust Agreement the Investment Trustee may also sometimes hereinafter be referred to as "Trustee";

## Witnesseth:

WHEREAS, the Trustor desires by this Trust Agreement to establish an Irrevocable Trust upon the conditions and for the purposes set forth in this instrument.

NOW, THEREFORE, the Trustor hereby gives, grants and delivers irrevocably, IN TRUST, unto the Investment Trustee, the properties described in the Asset Inventory, TO HAVE AND TO HOLD THE SAME IN TRUST, and to manage, invest and reinvest the same, and any later additions thereto, subject to the terms and conditions thereto.

## ARTICLE 1

## ADDITIONS TO TRUST

Additional property may be accepted by the Investment Trustee at a later time. The Trust shall be on a calendar year, ending December 31st of each year, for Trust tax and accounting purposes. Property subject in this instrument is referred to as the "Trust estate."

**OFFICIAL STAMP & DOCUMENT of the**
**BMA TRUST dated** _02_ / _18_ / 20 _08_
**BRUCE M. ABRAHAMSON as TRUSTEE**
**AUTHORIZED SIGNATURE(S):** _Bruce Michael Abrahamson_
**SIGNED:** _Bruce Michael Abrahamson_
_Elaine F. Abrahamson_

4

## ARTICLE 2

## BENEFICIARIES AND TRUST NAME

**2.1     Beneficiaries.**   The Trust shall be for the benefit of BRUCE MICHAEL ABRAHAMSON, and for other beneficiaries named herein.  The Trustor has no living children. The Trustor's mother, ELAINE F. ABRAHAMSON, shall also be a permissible beneficiary. This Trust may be for the benefit of any tax-exempt charities, which qualify as such under the laws of the United States of America by the Internal Revenue Service or other agency of the government of the United States of America for which contributions to such qualified charity may qualify for the charitable income tax deduction under Code Section 170, or any successor legislation thereto.

**2.2     Name.**   The Trust created in this instrument may be referred to as the "BMA TRUST."

## ARTICLE 3

## DISTRIBUTION OF INCOME AND PRINCIPAL

## DURING THE LIFE OF THE TRUSTOR

**3.1     Distribution of Income and Principal.**   During the lifetime of the Trustor, and until the death of the Trustor, any property which is directed to be held in accordance with the terms and conditions set forth in this Article shall be held, by the Trustee, IN TRUST, for the following use and purposes:  To manage, invest and reinvest the same, to collect the income thereof, and to pay over or apply the net income and/or principal thereof, and in such amounts and proportions, including all to one to the exclusion of the others, and at such time or times as the Trustee, in the Trustee's sole and absolute discretion, shall determine, to or for the benefit of such one or more members of the class consisting of the Trustor and the Trustor's issue, and other beneficiaries named herein or as described in Section 2.1 above, until the death of the Trustor.  Any net income (which may be the whole of such income) not so paid over or applied shall be accumulated and added to the principal of the trust at least annually and thereafter shall be held, administered and disposed of as part thereof.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated   02 / 18 / 20 08
BRUCE  M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S): 
SIGNED: *Bruce Michael Abrahamson, Elaine F. Abrahamson*

5

**3.2** **Trustor's Veto Right**. During the lifetime of the Trustor, at least ten (10) days prior to making any payment or application of income or principal to any beneficiary other than a Trustor, the Investment Trustee shall advise the Trustor of his/her intention to pay over or apply income or principal to a beneficiary and the Trustor may veto any such intended payment or application by directing the Investment Trustee in writing not to make and/or authorize the payment or application, and, if such veto is exercised by the Trustor, the Investment Trustee shall not make and/or authorize the intended payment or application to the intended beneficiary. The Trustor retains the right to renounce the veto power granted to the Trustor in this Article 3 by delivery of an acknowledged written instrument to the Trustee renouncing such veto power.

**3.3** **Distributions to a Trustor**. Notwithstanding anything in this Trust Agreement to the contrary, any decision to make a distribution to the Trustor may not be made by the Trustor, even though the Trustor may be serving as a Trustee hereunder. Prior to any distribution to the Trustor of either income or principal of the Trust estate, a meeting of a majority of the Trustees, which majority must also include the Distribution Trustees, shall be held. At such meeting, the Trustees shall discuss the advisability of making a distribution of the Trust estate to the Trustor. Upon the vote of the Distribution Trustee and a majority of the Investment Trustees, which vote must in all events include the affirmative vote of a majority of all of the Distribution Trustees, the Trustees may authorize and carry out the distribution of Trust income and/or principal to the Trustor.

Notwithstanding the foregoing, a meeting of the Investment Trustees and the Distribution Trustee shall be effective whether held in person, by telephone or by other electronic means. In addition, the Trustees may also effect a valid meeting hereunder by execution of a written consent in lieu of the Trustees' meeting, which shall specifically state the amount of the Trust estate to be distributed to Trustor. However, for any written consent to be effective, it must be by written consent and subscribed to by all Distribution Trustees.

**3.4** **Unauthorized Distributions to the Trustor**. In the event any distribution of any of the Trust estate shall be made to the Trustor, and if such distribution is not previously authorized pursuant to Section 3.3 above, then such distribution made to the Trustor shall be void and the Distribution Trustee shall have a lien against the Trust estate distributed to the Trustor and such lien shall also extend, if necessary to make the Trust estate whole, to any or all other

OFFICIAL STAMP & DOCUMENT of the 6
BMA TRUST dated ___02__ / _18_ /20_08_
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S): *Bruce M Abrahamson* *Elaine F. Abrahamson*

assets of the Trustor. For as long as any portion of the Trust estate has passed without proper authorization out of Trust to the Trustor, upon return of the unauthorized distribution plus interest on the value of such unauthorized distribution, at a rate of One Percent (1%) per month, compounded monthly. In the event of any such unauthorized distribution, the Distribution Trustee shall give notice of the unauthorized distribution to the other named non-charitable beneficiaries hereunder as set forth in Section 2.1 above. Furthermore, the Distribution Trustee shall have all other rights and powers as shall be necessary to recover from the Trustor the unauthorized distributions and to make the Trust estate whole.

3.5 **Power of Appointment**. While the Trustor is living, he shall have the testamentary power to direct the Trustee to pay over and distribute trust principal from the Trust estate in the manner provided in a special testamentary power of appointment signed by the Trustor and delivered to the Trustee. The Trustor's power to appoint beneficiaries of the Trust shall be unlimited; provided, however, that the Trustor, may not appoint the Trust estate, or any part thereof, to the Trustor, the estate of the Trustor, the Trustor's creditors, or to creditors of the Trustor's estate. The power of appointment shall not be limited with regard to the shares or proportions to be allocated or with regard to whether a distribution shall be outright or held in trust. If the Trustor has failed to appoint beneficiaries as provided above, then the remaining assets of the Trust shall be distributed as provided for in Article 4 below.

3.6 **Trustor's Retained Powers of Administration**. Notwithstanding any provisions contained herein to the contrary, the Trustor, whether or not acting in capacity as an Investment Trustee hereunder, shall have the power to reacquire the Trust corpus by substituting therefore other property of an equivalent value. This power may be exercised by the Trustor in a non-fiduciary capacity without the approval or consent of any Trustee, Co-Trustee or other person acting in a fiduciary capacity with respect to the Trusts created hereunder other than the right in the Trustee(s) to require fair appraisals of property received from Trustor or transferred to the Trustor in such substitution. This power of substitution shall apply only to the Trustor, and shall not override Nevada Revised Statutes 163.050 with respect to a trustee's acts of buying from or selling to an affiliate other than as specifically provided herein with respect to transfers between the Trustees and Trustor for fair value. Trustor understands that retention of such powers shall cause the Trust income to be taxable to him under Subchapter J, Subpart E of the Internal

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 2008
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: *Bruce Michael Abrahamson) Elaine F. Abrahamson*

Revenue Code of 1986, as amended, and agrees to pay all income taxes attributable to such Trust income.  The Trustor may irrevocably relinquish this power of substitution at any time by a writing given to the Trustee.

## ARTICLE 4

## DISTRIBUTION AND ADMINISTRATION

## AFTER THE DEATH OF THE TRUSTOR

**4.1**    **Distribution of Trust Assets**.  Upon the death of the Trustor, any remaining unappointed property, both income and principal of this Trust estate, shall be distributed to ELAINE F. ABRAHAMSON if she is then living and these Trust assets shall be retained herein and are to be made available as supplemental assistance for the benefit of the Beneficiary at the discretion of the Trustee.   In the event the Beneficiary is disabled as defined under the Supplemental Security Income Program of Title XVI of the Social Security Act and requires continuing support, assistance and supervisions, upon the death of the Trustor, it is the primary intention of the Trustor and any other parties hereto to provide for a continuing conservation and enhancement of the assets transferred to the Beneficiary, in order to supplement, but not supplant or replace all other financial and service benefits to which the Beneficiary might be eligible from any local, county, state, or federal agency through the use of a Special Needs Trust.  This Special Needs Trust shall be established in conformity with the requirements of 42 U.S.C. 1396p(d)(4)(A) and it is the express purpose of this Trust to supplement other benefits received by the Beneficiary and not provide for the Beneficiary's basic needs.   The Trustee shall administer and distribute this Special Needs Trust as follows:

(a)    The Trustee shall distribute to the Beneficiary or for her benefit, from this Special Needs Trust, as much of the net income and principal as the Trustee deems advisable, in the Trustee's absolute discretion for the welfare of the Beneficiary. However, in exercising this discretion, the Trustee is not required to make any distributions on behalf of the Beneficiary.  The Special Needs Trust income and principal shall not be made available to provide primary support for the Beneficiary.  Therefore, the Trustee is directed to investigate other sources of support available to the Beneficiary and to take whatever steps necessary to enroll the Beneficiary for such benefits or assistance.

(b)    The Trustee is authorized to make Special Needs Trust distributions to or on the Beneficiary's behalf in such a way that the Beneficiary's life will be enriched

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 2008
BRUCE M. ABRAHAMSON as TRUSTEE
AUTH          SIGNATURE(S):
SIGNED: Bruce/Michael Abrahamson/Elaine F. Abrahamson

and made more enjoyable, including, providing recreational and vacation opportunities for the Beneficiary. Any undistributed income shall be accumulated and added to principal.

(c)    In exercising discretion over the distribution of income and principal, the Trustee shall not use this Special Needs Trust in a manner that would disqualify the Beneficiary from available federal or state aid or cause these Special Needs Trust funds to bear all or part of the costs of the Beneficiary's treatment or assistance, if such costs would otherwise be borne by the state or federal government

(d)    Upon the death of the Beneficiary, the Trustee shall first distribute as much of the remaining Special Needs Trust, if any, to the Department of Human Services or its successor as shall be necessary to reimburse the medical assistance program of the appropriate jurisdiction for benefits provided to the Beneficiary during her lifetime, but only if the Trustee deems this reimbursement to be absolutely necessary, in the Trustee's sole discretion. In the event that there are Special Needs Trust assets from this Special Needs Trust that remain after payment for the reimbursement set forth above, the entire remaining Special Needs Trust shall be distributed to the estate of ELAINE F. ABRAHAMSON outright and free of trust.

**4.2    Last Resort Clause.** In the event that the principal of the Trust administered under this Article 4 is not disposed of under the foregoing provisions, the remainder, if any, shall be distributed as provided for in the LIVING TRUST OF BRUCE M. ABRAHAMSON, dated March 16, 1993, which trust agreement documents shall be placed on file with an Officer in the Offices of Northern Trust Company, Chicago, Illinois. In the event that the provisions of the Living Trust are later amended by BRUCE M. ABRAHAMSON, such amendment(s) shall, for purposes of determining the distribution of assets from this Trust, be treated and qualify *not* as amendment(s) to this *irrevocable* Trust, but instead as appointment(s) under the provisions of Section 3.5 above relating to special testamentary powers of appointment. Therefore, appointments made by way of the Trustor amending the Living Trust shall *not* apply to distributions hereunder to the extent they appoint this Trust estate, or any part hereof, to the Trustor, the estate of the Trustor, the Trustor's creditors, or to creditors of the Trustor's estate.

If the above disposition is inoperative in whole or in part, whether because the trust has been revoked, the provisions of Section 3.5 above relating to special testamentary powers of appointment would otherwise be violated, or for any other reason, the remainder shall be distributed outright and free of Trust, to the heirs at law of BRUCE M. ABRAHAMSON, their

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated _02_ /_18_/ _2008_
BRUCE M. ABRAHAMSON as Trustor
AUTHORIZED SIGNATURE(S):
SIGNED: *Bruce Michael Abrahamson* / *Elaine F. Abrahamson*

identities and shares to be determined according to the laws of the State of Nevada then in effect relating to the intestate succession of separate property.

## ARTICLE 5

## TRUSTEE'S DISCRETION ON DISTRIBUTION

## TO PRIMARY BENEFICIARIES

Notwithstanding the distribution provisions of this Trust Agreement, with respect to the distributions provided for in Article 4 above, the following powers and directions are given to the Distribution Trustee:

(a) If, upon any of the dates described herein, the Trustee for any reason described below determines, in the Trustee's sole discretion, that it would not be in the best interest of the beneficiary that a distribution take place, then in that event the said distribution shall be totally or partially postponed until the reason for the postponement has been eliminated. During the period of postponement, the Trustee shall have the absolute discretion to distribute income or principal to the beneficiary as the Trustee deems advisable for the beneficiary's welfare.

(b) If said causes for delayed distribution are never removed, then the Trust share of that beneficiary shall continue until the death of the beneficiary and then be distributed as provided in this Trust Instrument. The cases of such delay in the distribution shall be limited to any of the following:

(1) The current involvement of the beneficiary in a divorce proceeding or a bankruptcy or other insolvency proceedings.

(2) The existence of a large judgment against the beneficiary.

(3) Chemical abuse or dependency, or the conviction of the beneficiary of a felony, involving drugs or narcotics, unless a five year period has followed said conviction.

(4) The existence of any event that would deprive the beneficiary of complete freedom to expend the distribution from the Trust estate according to his or her own desires.

(5) In the event that a beneficiary is not residing in the United States of America at any given time, then the Trustee may decline to transmit to him or her any part or all of the income and shall not be required to transmit to him or her any of the principal if, in the Trustee's sole and uncontrolled judgment, the political and/or economic conditions of such place or residence of the beneficiary

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated ___02_ / _18_ / _20_08__
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce/Michael Abrahamson / Elaine J. Abrahamson_

are such that it is likely the money would not reach him or her, or upon reaching him or her, would be unduly taxed, seized, confiscated, appropriated, or in any way taken from him or her in such a manner as to prevent his or her use and enjoyment of the same.

(6)   The final judicially declaration of incompetency of the beneficiary.

(7)   The Trustee shall not be responsible unless the Trustee has knowledge of the happening of any event set forth above.  The Trustees shall make reasonable efforts to be apprised of the current status of beneficiaries as required by provisions of the Trust Agreement.

(d)   To safeguard the rights of the beneficiary, if any distribution from his or her Trust share has been delayed for more than six (6) months, he or she may apply to the District Court in Las Vegas, Nevada or any state District Court having personal jurisdiction over the beneficiary, for a judicial determination as to whether the Trustee has reasonably adhered to the standards set forth herein.  The Trustee shall not have any liability in the event the Court determines the Trustee made a good faith attempt to reasonably follow the standards set forth above.

## ARTICLE 6

## DISTRIBUTIONS IN KIND

The Trustee is authorized and empowered, in the Trustee's sole discretion, to make distributions in kind, or partly in cash and partly in kind, or by granting, transferring or assigning an undivided interest. The judgment of the Trustee concerning the valuation for the purposes of such distribution of the property or security shall be binding and conclusive on all parties interested herein.

## ARTICLE 7

## IRREVOCABLE TRUST

The Trust is irrevocable and may not be altered, amended or revoked.  Should any power or interest be held, retained or hereafter acquired by the Trustor or Trustee which would cause or appear to cause the Trust estate for any reason to be subject to the claims of any creditors, then the Trustor and Trustee shall be permitted to abandon or release any such powers or interests.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated _02_ / _18_ / 20_08_
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_ [11]   _Elaine J. Abrahamson_

## ARTICLE 8

## ADDITIONAL PROPERTIES

It is agreed by and between the parties hereto that the Trustor shall have the right, at any time, to devise, bequeath, grant, convey, give or transfer additional real, personal or mixed properties to the Trust by *inter vivos* act or by will, subject to the same terms and conditions as the original provisions of this Trust Agreement, and said additions shall be evidenced by receipt therefore signed by the Trustee.

## ARTICLE 9

## INCOMPETENCY OF BENEFICIARIES

During any period in which a beneficiary may have either been declared (1) judicially incompetent by a court of competent jurisdiction, or (2) become physically or mentally incapacitated, as certified in writing by a licensed physician, or then  if in the sole judgment of the Trustee the beneficiary is unable to care for himself or herself, the Trustees may pay over to, or use for the benefit of such beneficiary the net income or any part or all of the principal of the Trust estate which has been set aside for that beneficiary, in such manner as the Trustees shall deem necessary or desirable for such beneficiary's best interests.

## ARTICLE 10

## PROVISIONS RELATING TO TRUSTEESHIP

**10.1    Trustee Defined**.  Except where specific powers are given to the Distribution Trustee as provided herein, wherever the term "Trustee" is used, it shall be deemed to mean the Investment Trustee.

**10.2    Successor Investment Trustee**.  Upon the death or resignation of BRUCE M. ABRAHAMSON, then ELAINE F. ABRAHAMSON shall serve as the Successor Investment Trustee hereunder.   Upon the death, resignation or removal of ELAINE F. ABRAHAMSON, then TERRY COAKLEY of RSM MCGLADREY shall serve as the Successor Investment Trustee hereunder.   Upon the death, resignation or removal of TERRY COAKLEY OF RSM MCGLADREY then NORTHERN TRUST COMPANY shall serve as the Successor Investment Trustee hereunder.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 20 08
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: Bruce Michael Abrahamson / Elaine F. Abrahamson

**10.3    Successor Distribution Trustee.**  Upon the death, resignation or removal of ELAINE F. ABRAHAMSON, then TERRY COAKLEY of RSM McGLADREY shall serve as the Successor Distribution Trustee hereunder.  Upon the death, resignation or removal of TERRY COAKLEY, then NORTHERN TRUST COMPANY shall serve as the Successor Distribution Trustee hereunder; provided, however, that in the event of the death of the Trustor, the Distribution Trustee shall cease to serve as Trustee hereunder, and the administration and distribution of the Trust estate shall thereupon be under the exclusive control of the Investment Trustee.

**10.4    Successor Special Administrative Trustee.**  Upon the death, resignation or removal of DAVID M. GRANT of JEFFREY BURR, LTD., then NORTHERN TRUST COMPANY shall serve as Successor Special Administrative Trustee hereunder.  In the event that no other Nevada Trustee, as defined in Section 10.14 below, is then serving as a Trustee hereunder, the Trust Consultant shall in his or her sole discretion appoint a Successor Special Administrative Trustee to serve hereunder so long as such Successor qualifies as a "Nevada Trustee" as defined in Section 10.14 below.

**10.5    Trust Consultant.**    JEFFREY BURR, LTD., a Nevada corporation (herein known as the "Consultant" to the Trust) shall have the right and power by giving ten (10) days written notice to the Trustee to remove any Trustee named herein (except the Trust Consultant may not remove the Trustor as a Trustee hereunder), and/or any Successor Trustee, and to appoint any persons to serve as Trustee(s) or Co-Trustees of the Trusts created hereunder.  In the event of the death, resignation, incompetency, dissolution or failure to serve of any Trustee, then the Trust Consultant shall have the power to appoint a Successor Trustee as provided above.  In the event he shall fail to appoint a Successor Trustee, then a majority of the Adult Beneficiaries may appoint any person to so serve.  At all times at least one Trustee serving shall be a Nevada Trustee, as defined below, unless the Trustees shall choose to administer the Trust under a jurisdiction outside the State of Nevada.  Notwithstanding the foregoing, the Trustor shall have the right and power, at any time and in writing, to remove a Trust Consultant and to appoint an independent Successor Trust Consultant to serve instead.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated _02_ / _18_ / _2008_
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_  13  _Elaine F. Abrahamson_

**10.6   <u>Resignation of Trustee</u>**.  Any Trustee named herein, and any Successor Trustees, shall have the right to resign at any time by giving twenty-one (21) days written notice to the Trustor, during his lifetime, or to the Beneficiaries after the death of the Trustor.

**10.7   <u>Liability of Successor Trustee</u>**.  No Successor Trustee shall be liable for the acts, omissions, or default of the prior Trustees.  Unless requested in writing by an adult beneficiary of a Trust hereunder within sixty (60) days of appointment, no Successor Trustee shall have any duty to audit or investigate the accounts or administration of any such Trustee, and may accept the accounting records of the predecessor Trustee showing assets on hand without further investigation and without incurring any liability to any person claiming or having an interest in the Trust.

**10.8   <u>Acceptance by Trustee</u>**.  A Trustee shall become Trustee or Co-Trustee jointly with any remaining or surviving Co-Trustees, and assume the duties thereof, immediately upon delivery of written acceptance to the Trustor, during his lifetime and thereafter to any Trustees hereunder, or to any beneficiary hereunder, if for any reason there shall be no Trustee then serving, without the necessity of another act, conveyance, or transfer.

**10.9   <u>Majority</u>**.  Subject to any limitations stated elsewhere in this Trust Indenture (said limitations control), all decisions affecting any of the Trust estate shall be made in the following manner:  While three or more Investment Trustees are in office, the determination of a majority shall be binding.  If only one or two Investment Trustees are in office, they must act unanimously.  While three or more Distribution Trustees are in office, the determination of a majority shall be binding.  If only one or two Distribution Trustees are in office, they must act unanimously.

**10.10   <u>Expenses and Fees</u>**.  Any Trustee, while serving hereunder, shall be entitled to be reimbursed for expenses incurred on behalf of the Trust and to be reasonably compensated for necessary services rendered on behalf of the Trust.  In no event, however, shall the fees exceed those fees that would have been charged by state or federal banks in the jurisdiction in which the Trust Primary Beneficiary is living or is being governed.  Before any Trustee shall render billable services on behalf of the Trust or make a change to the approved fee structure, he or she shall first provide for approval at least fourteen (14) days advanced written notice of such fees to

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 2014 08
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: Bruce Michael Abrahamson  Elaine F. Abrahamson

the Trustor, during his lifetime, or following the death of the Trustor, to the beneficiaries of the Trust. Until such notice is provided and thereafter approved in writing by the Trustor or beneficiaries, no Trustee shall receive any proposed fees for services rendered on behalf of the Trust.

**10.11  Acknowledgment by Trustee of Trust Property.** The Investment Trustees hereby acknowledge receipt of, and accept the property and the Trusts created hereunder on the terms and conditions stated and agree to care for, manage and control the same in accordance with directions herein specified; to furnish the Trustor and the Distribution Trustee no more frequently than annually if requested to do so, in writing, a statement showing the condition of their respective Trust properties, the character and amounts of the investments and liabilities and the receipts, expenses and disbursements since the last previous statement. The books of account of the Investment Trustees in connection with the investment and the books of account of the Distribution Trustee shall at all times be open to the reasonable inspection of the Trustor while living and to the other beneficiaries after the death of the Trustor, or his duly qualified representatives and such person or persons as they may designate for that purpose.

**10.12  Trustee Actions.** Any Trustee may freely act under all or any of the powers of this agreement given to the Trustee in all matters concerning the Trust, after forming judgment based upon all the circumstances of any particular situation as to the wisest and best course to pursue in the interest of the Trust and the beneficiaries hereunder, without the necessity of obtaining the consent or permission of any person interested herein (subject to the Trustor's veto power granted pursuant to Section 3.2 above and subject to the distribution authorizations as provided for in Section 3.3 above), or the consent or approval of any court, and notwithstanding that the Trustee may also be acting individually, or as Trustee of other Trusts, or as agents of other persons or corporations interested in the same matters, or may be interested in connection with the same matters as stockholders, directors or otherwise; provided, however, that the Trustee shall exercise such powers at all times in a fiduciary capacity, primarily in the interest of the beneficiaries hereunder. Furthermore and if applicable, the Trustee of this Trust, as a licensed individual stockholder, director, member, manager, or otherwise, of a professional corporation or professional company owned by this Trust, who is legally qualified, may render the same specific professional services as those for which the professional corporation or

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 2008
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: *Bruce Michael Abrahamson* / *Elaine F. Abrahamson*

company was incorporated; provided, however, under no circumstances shall a Trustee of this Trust enter into any type of agreement vesting another person, including a Trustee of this Trust, with the authority to exercise the voting power of any or all professional stock, unless the other person is licensed to render the same specific professional services as those for which the professional corporation was incorporated.

**10.13   Bond**.  No bond shall ever be required of any Trustee hereunder, unless requested by the Trustor or, following the death or incapacity of the Trustor, a majority of the beneficiaries hereunder, in which event the Trust estate shall pay for such bond or shall reimburse the Trustee for any payment made by the Trustee for a bond.

**10.14   Nevada Trustee**.  A Nevada Trustee is a person who/which is either (a) a natural person who resides in or is domiciled in the State of Nevada, **or** (b) a bank or trust company organized under federal law or under the laws of the State of Nevada or another state which maintains an office in the State of Nevada for the transactions of business. "Nevada Trustee" is also defined to include any person which qualifies as a Nevada Trustee pursuant to Nevada Revised Statutes Chapter 166.

**10.15   Distribution Trustee**.  Any Trustee designated as a Distribution Trustee shall only be allowed to exercise discretion over distributions of the Trust estate as explicitly provided for herein.  Said Trustee shall not be responsible for investment decisions for the Trust or for reporting, accounting or tax filings of the Trust.  The Trustor and the Investment Trustees, by accepting the Investment Trusteeship, agree to indemnify and hold harmless the Distribution Trustee for all actions made by the Distribution Trustee in the capacity as Distribution Trustee, except for willful misconduct or actions of gross negligence.  If ever the Trustor resides in a State other than the State of Nevada and is still serving as Investment Trustee hereunder, the Distribution Trustee shall also have primary authority and responsibility for the preparation of the accountings and tax filings for this Trust, unless another Trustee, such as the Special Administrative Trustee, is then living in the State of Nevada and qualifies as a Nevada Trustee under Section 10.14 above.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated __02_/_18_/_2008_
BRUCE  M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_ 16  _Elaine F. Abrahamson_

**10.16  Investment Trustee.**  The Investment Trustee(s) shall at all times have the exclusive custody of the entire Trust estate and shall be the legal owner of the Trust estate. The title to Trust properties need not include the name of the Distribution Trustee and the Special Administrative Trustee, and all Trustee powers, as set forth in Section 11.1 below, may be effected under the sole and exclusive control of the Investment Trustees, subject to the requirements of authorization of distributions to the Trustor as set forth in Section 3.3 above.

**10.17  Special Administrative Trustee.**  Any Trustee designated as a Special Administrative Trustee shall only be allowed to perform the actions necessary to fulfill the duties explicitly provided for the Special Administrative Trustee herein. Said Trustee shall not be responsible for investment decisions for the Trust. The Trustor, the Distribution Trustees and the Investment Trustees, by accepting the Investment and Distribution Trusteeship, agree to indemnify and hold harmless the Special Administrative Trustee for all actions made by the Special Administrative Trustee in the capacity as Special Administrative Trustee, except for willful misconduct or actions of gross negligence. The Special Administrative Trustee shall have the following exclusive duties, which shall be carried out in the State of Nevada or in such other jurisdiction as the Trustee shall from time to time select as the situs for the Trust:

(a)  To maintain the financial records of the Trust when asked to do so by the other Trustees;

(b)  To maintain an office for meetings of the Trustees and other business of the Trust; and

(c)  To review accountings, tax returns, financial reports and other communication with the Trustor, the Trustees, the Beneficiaries and unrelated third parties when asked to do so by the other Trustees.

The Special Administrative Trustee shall have no duties, obligations or authorities other than those which are set forth in this Article and the Trustees serving from time to time need not obtain the consent of or consult with or otherwise advise the Special Administrative Trustee prior to exercising any of the Trustee's powers or performing any of the Trustee's duties hereunder.

The Special Administrative Trustee shall have no fiduciary responsibility to observe, monitor or evaluate the actions of the Trustees and shall not be liable to any party for the failure to seek to remedy a breach of trust or, in a recurring situation, to request instructions from a court

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 2008.17
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: Bruce M Michael Abrahamson / Elaine J. Abrahamson

having jurisdiction over the Trust, even if the Trustees may be guilty of a gross violation of the Trustees' fiduciary duties hereunder. The Special Administrative Trustee shall be fully indemnified by the Trust against any claim or demand by any beneficiary or creditor of the Trust except for any claim or demand based on the Special Administrative Trustee's own willful misconduct or gross negligence. Expenses incurred by the Special Administrative Trustee in defending any such claim or demand shall be paid by the Trust in advance of the final disposition of such claim or demand pursuant to the restrictions of Section 10.10 above, upon receipt of an undertaking by or on behalf of the Special Administrative Trustee to repay such amount if it shall ultimately be determined that the Special Administrative Trustee is not entitled to be indemnified as authorized by this subparagraph. In no event shall the Special Administrative Trustee hereunder be liable for any matter with respect to which it is not authorized to participate hereunder (including any duty to review or monitor the investments of the Trust).

Any successor to the Special Administrative Trustee resulting from a corporate reorganization, acquisition or merger shall become the successor Special Administrative Trustee of this Trust without conveyance or transfer.

## ARTICLE 11

### TRUST CONSULTANT'S LIMITED POWER OF AMENDMENT

**11.1    Trust Consultant's Limited Powers.** In the case of each separate trust at any time in existence hereunder, such trust's then Consultant, other than any (i) one who has ever made a gift transfer to such trust, or (ii) who is prohibited by the provisions of Section 11.2 below from participating in this amendment, from time to time may, notwithstanding any other provision of this Instrument, amend or restate this Instrument, including its dispositive, administrative and other provisions of all kinds, in order to permit the Trust or Trustees:

    (a)    To cope with tax and/or other circumstantial changes that may affect such trust and/or its beneficiaries; and/or

    (b)    To remove from the governing trust instruments any provisions which have become "deadwood" (i.e., no longer operative in the ongoing administration of such trust due to changed circumstances) with respect to (i) such trust, and (ii) all trusts that are subsequently to come into existence under this Instrument to hold part or all of the assets of such

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated __02_ / _18_ / 20 __08__
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_ _Elaine F. Abrahamson_

trust, in whatever way or ways such Trustees, in the exercise of such Trustee's sole discretion, may deem appropriate in the best interests, as interpreted by such Trustee(s) alone, of the beneficiary(ies) of such trust(s) and of each beneficiary's family as a whole.  Such would apparently be the Trustor's original intent hereunder in the light of the changed circumstances.

11.2  **Limitation of Powers**.   Notwithstanding the foregoing, however, under no circumstances (i) shall any Consultant, who is also a beneficiary of any such trust, participate in any amendment which may result in such Consultant/beneficiary receiving any direct or indirect financial benefit from any such trust, nor (ii) shall any such amendment:

(a)   Extend the period of any such trust's existence beyond the already applicable rule against perpetuities limitation period specified herein;

(b)   Diminish in any way (that is not controlled by the beneficiary) any enforceable right a beneficiary may already have (under the then terms of this Instrument) to receive the income of any trust, currently or at any time in the future (but, to the extent an amendment benefits or grants a power to a current beneficiary of that trust it may diminish the rights of one or more beneficiaries to receive in the future the income of that trust or of any trust subsequently to come into existence to hold part of all of the assets of that trust);

(c)   Reduce in any way the restrictions and limitations on (i) Trustor and fiduciary actions as set forth herein (ii) the Consultant's limited powers of amendment under this Article and (iii) who (or what institutions) can qualify to fill any office of Trustee hereunder as set forth herein, unless such reduction of restrictions and/or limitations will not have any adverse tax effect on such trust or any of its beneficiaries (all of which provisions, referred to in (i), (ii), and (iii) above, however, may be amended, irrevocably and binding on successors, to increase such restrictions and limitations in any way such amending Consultant's may deem appropriate);

(d)   Give (i) any Trustee any powers or discretion that are either granted exclusively to a Co-Trustee or from the exercise of which such Trustee is excluded for any reason, nor (ii) anyone acting in a non-fiduciary capacity any powers granted herein to fiduciaries unless, in either case, such amendment will not have any adverse tax effect on such trust or any of its beneficiaries;

(e)   Make any change that would have the effect of disqualifying any such trust insofar as such trust, prior to such amendment, otherwise qualified for and was in fact already taking advantage of, while such advantage

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 2008
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: Bruce Michael Abrahamson  Elaine F. Abrahamson

otherwise will continue, (i) any exemption from a surviving spouse's elective right or from any creditor's right to levy on any beneficiary's interest in any such trust, or (ii) protection provided pursuant to the spendthrift provisions as set forth herein; and

(f)      Any such amendment shall be by written instrument, executed by such amending Consultant, setting forth the trust or trusts hereunder to which the amendment applies and the effective date of such amendment.

## ARTICLE 12

## TRUSTEE POWERS AND LIMITATIONS

12.1    **Trustee's Powers**.  No Trustee shall be liable to any beneficiary or heir of the Trustor for the Trustee's acts or failure to act, except for willful misconduct or gross negligence.

The Investment Trustees shall have the following powers, all of which are to be exercised in a fiduciary capacity:

(a)      With respect to real property:  to sell and to buy real property; to mortgage and/or convey by deed of trust or otherwise encumber any real property now or hereafter owned by this Trust (including, but not limited to any real property, the Trustee may hereafter acquire or receive) to lease, sublease, release; to eject, remove and relieve tenants or other persons from, and recover possession of by all lawful means; to accept real property as a gift or as security for a loan; to collect, sue for, receive and receipt for rents and profits and to conserve, invest or utilize any and all of such rents, profits and receipts for the purposes described in this paragraph; to do any act of management and conservation, to pay, compromise, or to contest tax assessments and to apply for refunds in connection therewith; to employ laborers; to subdivide, develop, dedicate to public use without consideration, and/or dedicate easements over; to maintain, protect, repair, preserve, insure, build upon, demolish, alter or improve all or any part thereof; to obtain or vacate plats and adjust boundaries; to adjust differences in valuation on exchange or partition by giving or receiving consideration; to release or partially release real property from a lien.

(b)      To register any securities or other property held hereunder in the names of Trustees or in the name of a nominee, with or without the addition of words indicating that such securities or other property are held in a fiduciary capacity, and to hold in bearer form any securities or other property held hereunder so that title thereto will pass by delivery, but the books and records of Trustees shall show that all such investments are part of their respective funds.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated  02 / 18 / 20 08
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: Bruce Michael Abrahamson   Elaine F. Abrahamson

(c)  To hold, manage, invest and account for the separate Trusts in one or more consolidated funds, in whole or in part, as they may determine.  As to each consolidated fund, the division into the various shares comprising such fund need be made only upon Trustees' books of account.

(d)  To lease Trust property for terms within or beyond the term of the Trust and for any purpose, including exploration for and removal of gas, oil, and other minerals; and to enter into community oil leases, pooling and unitization agreements.

(e)  To borrow money, mortgage, pledge or lease Trust assets for whatever period of time Trustee shall determine, even beyond the expected term of the respective Trust.

(f)  To hold and retain any property, real or personal, in the form in which the same may be at the time of the receipt thereof, as long as in the exercise of their discretion it may be advisable so to do, notwithstanding same may not be of a character authorized by law for investment of Trust funds.

(g)  To invest and reinvest in their absolute discretion, and they shall not be restricted in their choice of investments to such investments as are permissible for fiduciaries under any present or future applicable law, notwithstanding that the same may constitute an interest in a partnership.

(h)  To advance funds to any of the Trusts for any Trust purpose.  The interest rate imposed for such advances shall not exceed the current rates.

(i)  To institute, compromise, and defend any actions and proceedings.

(j)  To vote, in person or by proxy, at corporate meetings any shares of stock in any Trust created herein, and to participate in or consent to any voting Trust, reorganization, dissolution, liquidation, merger, or other action affecting any such shares of stock or any corporation which has issued such shares of stock.

(k)  Except as limited in Section 3.3 above, to partition, allot, and distribute, in undivided interest or in kind, or partly in money and partly in kind, and to sell such property as the Trustees may deem necessary to make division or partial or final distribution of any of the Trusts.

(l)  To determine what is principal or income of the Trusts and apportion and allocate receipts and expenses as between these accounts.

(m)  Except as limited by Section 3.3 above, to make payments hereunder directly to any beneficiary under disability, to the guardian of his or her person or estate, to any other person deemed suitable by the Trustees, or by direct payment of such beneficiary's expenses.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated _02_/_18_/2008_
BRUCE M. ABRAHAMSON as TRUSTEE[21]
AUTHORIZED SIGNATURE(S):
SIGNED: Bruce Michael Abrahamson / Elaine F. Abrahamson

(n)    To employ agents, attorneys, brokers, and other employees, individual or corporate, (collectively referred to as "agents") and to pay them reasonable compensation, which shall be deemed part of the expenses of the Trusts and powers hereunder. Before any Trustee shall render billable services on behalf of the Trust he or she shall first provide for approval by an advanced written notice of at least fourteen (14) days of such agents' fees to the Trustor, during his lifetime, or following the death of the Trustor, to the beneficiaries of the Trust. Until such notice is provided and thereafter approved in writing by the Trustor or beneficiaries, no such agents shall receive any proposed fees for services rendered on behalf of the Trust.

(o)    To accept additions of property to the Trusts, whether made by the Trustor, a member of the Trustor's family, by any beneficiaries hereunder, or by anyone interested in such beneficiaries.

(p)    To hold on deposit or to deposit any funds of any Trust created herein, whether part of the original Trust fund or received thereafter, in one or more savings and loan associations, bank or other financial institution and in such form of account, whether or not interest bearing, as Trustees may determine, without regard to the amount of any such deposit or to whether or not it would otherwise be a suitable investment for funds of a trust.

(q)    To open and maintain safety deposit boxes in the name of this Trust.

(r)    Except as limited to by Section 3.3 above, to make distributions to any Trust or beneficiary hereunder in cash or in specific property, real or personal, or an undivided interest therein, or partly in cash and partly in such property, and to do so without regard to the income tax basis of specific property so distributed. The Trustor requests but does not direct, that the Trustees make distributions in a manner which will result in maximizing the aggregate increase in income tax basis of assets of the estate on account of federal and state estate, inheritance and succession taxes attributable to appreciation of such assets.

(s)    Except as limited by Section 3.3 above, the powers enumerated in Nevada Revised Statutes 163.265 to 163.410, inclusive, are hereby incorporated herein to the extent they do not conflict with any other provisions of this instrument.

(t)    The enumeration of certain powers of the Trustees shall not limit their general powers, subject always to the discharge of their fiduciary obligations, and being vested with and having all the rights, powers, and privileges which an absolute owner of the same property would have.

(u)    To invest Trust assets in securities of every kind, including debt and equity securities, to buy and sell securities, to write covered securities

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated _02_ / _18_ / 20_08_
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_ _Elaine F. Abrahamson_

options on recognized options exchanges, to buy-back covered securities options listed on such exchanges, to buy and sell listed securities options, individually and in combination, employing recognized investment techniques such as, but not limited to, spreads, straddles, and other documents, including margin and option agreements which may be required by securities brokerage firms in connection with the opening of accounts in which such option transactions will be effected.

(v)     To sell any property in the Trust estate, with or without notice, at public or private sale and upon such terms as the Trustee deems best, without appraisement or approval of court.

(w)     To invest and reinvest principal and income in such securities and properties as the Trustees shall determine. The Trustees are authorized to acquire, for cash or credit (including margin accounts), every kind of property, real, personal or mixed, and every kind of investment (whether or not unproductive, speculative, or unusual in size of concentration), specifically including, but not by way of limitation, corporate or governmental obligations of every kind and stocks, preferred or common, of both domestic and foreign corporations, shares or interests in any unincorporated association, Trust, or investment company, including property in which the Trustees are personally interested or in which the Trustees own an undivided interest in any other Trust capacity.

(x)     To deposit Trust funds in commercial savings or savings bank accounts in unlimited amounts for an unlimited period of time, with or without interest and subject to such restrictions upon withdrawal as the Trustees shall agree; any Trustee may sign on such account without any Trustee co-signature unless the signature card shall provide otherwise.

(y)     To borrow money for any Trust purpose upon such terms and conditions as may be determined by the Trustees, and to obligate the Trust estate for the repayment thereof; to encumber the Trust estate or any part thereof by mortgage, deed of trust, pledge or otherwise, for a term within or extending beyond the term of the Trust.

(z)     To grant options and rights of first refusal involving the sale or lease of any Trust asset and to sell upon deferred payments, or to acquire options and rights of first refusal for the purchase or lease of any asset, to purchase notes or accounts receivable whether secured or unsecured.

(aa)    To employ and compensate, out of the principal or income or both, as the Trustees shall determine, such agents, persons, corporations or associations, including accountants, brokers, attorneys, tax specialists, certified financial planners, realtors, and other assistants and advisors deemed needful by the Trustees even if they are associated with a Trustee, for the proper settlement, investment and overall financial planning and

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated _02_ / _18_ / _2008_
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_ / _Elaine F. Abrahamson_

administration of the trusts; and to do so without liability for any neglect, omission, misconduct, or default of any such person or professional representative provided such person was selected and retained with reasonable care.

(bb)    To invest and reinvest all or any part of the assets of any trust in any money management or registered investment advisory service which would provide for professional management of any such assets.  In this regard, the Trustor specifically allows the Trustees to authorize the advisory service to have the discretionary authority to invest and reinvest the assets transferred to such advisor by the Trustees without the requirement of prior approval of the Trustees on any transactions.

(cc)    Notwithstanding the prohibitions under Nevada Revised Statute 163.050 and any such Successor provisions, or notwithstanding any prohibitions against "self-dealing" as are provided under the laws of any other jurisdiction pursuant to which laws this Trust may be administered, any Trustees shall not be prohibited from engaging in acts of self-dealing with Trust property, either directly or indirectly, so long as such act of self-dealing is disclosed to the Distribution Trustee and so long as the Trustees, in selling his, her or their own property or selling other properties in an agency or other fiduciary capacity to the Trust or in purchasing Trust assets for his or her personal account or in purchasing Trust assets in an agency or other fiduciary capacity, gives fair consideration in exchange for all Trust properties received.  Where Trustees have engaged in acts of self-dealing for fair and adequate consideration, and has/have given notice to the Distribution Trustee and to the guardians of any minor beneficiaries, Trustees shall be relieved of any liability, sanction, and allegation of wrongdoing for such acts by any Court of other legal authority.

(dd)    To retain for any period of time any property which may be received or acquired, even though its retention by reason of its character or otherwise would not be appropriate apart from this provision.

(ee)    In the event the purchase, use or disposition of any trust property gives rise to either threatened or actual liability such that, in the sole opinion of the Trustees, the remaining assets of the Trust are thereby placed at risk of exposure to such liability, the Trustees shall be empowered to take such further and necessary steps as they deem prudent to protect and preserve the remaining assets of the trust, including but not limited to transferring such property giving rise to the threatened or actual liability to a separate trust formed to hold said property.  The Trustees shall be further empowered to appoint an independent third party to act as Trustee over the newly-formed trust, and such trust shall be administered according to, and governed by the terms of, this Trust Agreement. The Beneficiaries of the new trust shall be the same beneficiaries as herein, and their interests in the new trust shall be in the same proportion as indicated herein. The

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 20 08
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: Bruce Michael Abrahamson / Elaine F. Abrahamson

Trustees of the new trust shall maintain records and books of accounts which are independent of and separate from the records and accounts maintained hereunder.

(ff)    The Trustees shall have the power to deal with matters involving the actual, threatened or alleged contamination of property held in the Trust estate (including any interests in partnerships or corporations and any assets owned by such business enterprises) by hazardous substances, or involving compliance with environmental laws. In particular, the Trustees may:

(1)    Inspect and monitor trust property periodically, as necessary, to determine compliance with any environmental law affecting such property, with all expenses or such inspection and monitoring to be paid from the income or principal of the trust;

(2)    Respond (or take any other action necessary to prevent, abate or "clean up") as it shall deem necessary , prior to or after the initiation of enforcement action by any governmental body, to any actual or threatened violation of any environmental law affecting any of such property, the cost of which shall be payable from trust assets;

(3)    Settle or compromise at any time any claim against the Trust related to any such matter asserted by any governmental body or private party;

(4)    Disclaim any power which the Trustees determine may cause it to incur liability as a result of any such matter, whether such power is set forth herein, or granted or implied by any statute or rule of law.

(gg)    The Trustees shall not be personally liable to any beneficiary or other party interested in the Trust, or to any third parties, for any claim against the Trust for the diminution in value of Trust property resulting from such matters, including any reporting of or response to (1) the contamination of Trust property by hazardous substances; or (2) violations of any environmental laws related to the Trust; provided that the Trustees shall not be excused from liability for its or their own negligence or wrongful willful act.

(hh)    When used in this document the term "hazardous substance(s)" shall mean any substance defined as hazardous or toxic or otherwise regulated by any federal, state or local law(s) or regulation(s) relating to the protection of the environmental or human health ("environmental law(s)").

(ii)    Notwithstanding any contrary provision of this instrument, the Trustees may withhold a distribution to a beneficiary until receiving from the beneficiary an indemnification agreement in which the beneficiary agrees

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated __02_ / _18_ / 20 __08__
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_ / _Elaine F. Abrahamson_

to indemnify the Trustees against any claims filed against the Trustees pursuant to any federal, state or local statue or regulation relating to clean up or management of hazardous substances.

**12.2** **"Prudent Person" Rule.** In addition to the investment powers conferred above, the Trustees are authorized (but are not directed) to acquire and retain investments not regarded as traditional for trusts, including investments that would be forbidden by the "prudent person" rule. The Trustee may, in his or her sole discretion, invest in any type of property, wherever located, including any type of security or option, improved or unimproved real property, and tangible or intangible personal property, and in any manner, including direct purchase, joint ventures, partnerships, limited partnerships, corporations, mutual funds, or any other form of participation or ownership whatsoever. In making investments, the Trustees may disregard all of the following factors:

(a) Whether a particular investment or the trust investments collectively, will produce a reasonable rate of return or result in the preservation of principal.

(b) Whether the acquisition or retention of a particular investment, or the trust investments collectively, is consistent with any duty or impartiality as to the different beneficiaries. The Trustor intends no such duty shall exist.

(c) Whether the trust is diversified. The Trustor intends no duty to diversity shall exist.

(d) Whether any or all of the trust investments would traditionally be classified as too risky or speculative for trusts. The entire trust may be so invested. The Trustor intends the Trustees to have sole discretion in determining what constitutes acceptable risk and what constitutes proper investment strategy.

The Trustor's purpose in granting the foregoing authority is to modify the prudent person rule insofar as the rule would prohibit an investment or investments because of one or more factors listed above, or any other factor relating to the nature of the investment itself. Accordingly, the Trustees shall not be liable for any loss in value of an investment merely because of the nature of the investment or the degree of risk presented by the investment, but shall be liable if the Trustees' procedures in selecting and monitoring the investment are proven by affirmative evidence to have been negligent, and such negligence was the proximate cause of the loss.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 2008
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: Bruce Michael Abrahamson / Elaine F. Abrahamson

**12.3   Permitted Methods of Distribution**.

(a)   With respect to any sum or property, whether income or principal, which is required or permitted to be distributed out of any trust hereunder to or for the benefit of any person, whether or not such person is, at the time, a minor and whether or not the Trustees of such trust determine such person to be under any disability preventing such person from acting properly on such person's own behalf (irrespective of whether legally so adjudicated), such Trustees may make distribution or the same in any one or more of the following ways as such Trustee, from time to time, in his or her sole discretion, shall deem to be most expedient in the best interests of such person; namely, by paying, distributing or applying the same to:

(1)   Such person directly;

(2)   The duly appointed conservator, guardian or committee for such person, if any;

(3)   An apparently qualified individual (other than any donor to such trust) or bank who, in taking the same "as custodian for" such person under the appropriate state's Uniform Transfers to Minors Act, indicates that such sum or property will be treated in all respects as "custodial property" for the benefit of such person in accordance with the provisions of such act of such state (whether or not such act permits custodial property of such an origin) or other uniform gifts to minors or similar act in that state;

(4)   The parent, spouse or other individual having the care and custody of such person (other than any donor to such trust) who, as such person's natural guardian, shall agree to preserve the same for the immediate or ultimate benefit of such person (or such person's estate), but who shall not be obligated to qualify as a legal guardian or account to any probate court therefore;

(5)   The Trustee or Trustees of any trust, all of the assets of which are then fully and unqualifiedly withdrawable by such person;

(6)   The direct payment of any educational, medical or other property expense of such person (or any person to whose support or education such person would, in such Trustee's reasonable judgment, normally be expected to contribute), including expenses, such as taxes, repairs, etc., reasonably appropriate to preserving any assets belonging to such person, as long as such expense is not the legal obligation of any other person;

(7)   The purchase of stocks, bonds, insurance (the term "purchase" shall include any premium payment), or other properties of any

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated __02_ / _18_ / 2008
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_  _Elaine F. Abrahamson_

kind, the ownership of which is registered in the sole name of such person; or

(8)  The making of a deposit into a bank, savings and loan association, brokerage or other similar account in the sole name of such person, provided that distribution shall be made in the manner described in subparagraphs (3) and (4) above only if legally enforceable indemnification in favor of such person is received against anyone other than such person (or such person's estate) benefiting thereby (even through the discharge of an obligation to support such person).  The receipt of or evidence of any such payment, distribution or application shall be a complete discharge and acquittance of such Trustee to the extent of such payment, distribution or application and, except for enforcement of such payment, distribution or application and, except for enforcement of any above described indemnification, such Trustee shall have no duty to see to the actual application of amounts so paid or distributed to others.

(b)  Notwithstanding the foregoing, however, where distributions are required to be made to or for the "direct" benefit of a person, only distributions made in the manner described in subparagraphs (1), (5), (6) (except for its parenthetical provision), (7) or (8) above shall be considered to have been made for the "direct" benefit of such person.

**12.4    Use and Enjoyment of Trust Owned Personal Property and Affiliated Real Property.**  From time to time, the Trust estate may include residential real estate and/or tangible personal property.  The Distribution Trustee shall have the sole and absolute discretion to determine the possession, use and enjoyment of (i) all the tangible personal property at any time held by such trust, and (ii) all real property that may at any time constitute an asset of the trust and that could be occupied or used by a beneficiary (or beneficiaries) for residential purposes, whether as a primary residence, seasonal residence or otherwise.  Such use, possession and enjoyment may be without rent or other financial obligation and the Trustee of the Trust, to the extent of the Trust assets and except as they may be relieved of such obligation by such beneficiary (or beneficiaries), shall see to the timely payment of all taxes, insurance, maintenance, and repairs, safeguarding and other charges related to the preservation and maintenance of each and every such property.

**12.5    Compensation of Trustees.**  Subject to the restrictions of Section 10.10, above, and only to the extent that this Section 12.5 does not conflict with the provisions of Section

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 2008
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: Bruce Michael Abrahamson / Elaine F. Abrahamson

10.10 above, all Trustees may receive reasonable compensation for services rendered hereunder, plus extraordinary fees, if applicable, determined annually. Each separate Trust hereunder shall be chargeable with and may pay without application to any court:

(a)  The reasonable expenses of its Trustee(s) in the administration of such Trust, including the fees and expenses of such agents, attorneys, accountants and advisors as such Trustee(s) may employ in the administration of such Trust.

(b)  Compensation for a Corporate Trustee's services in the amount and at the time specified in its Schedule of Fees and Charges established from time to time for the administration of trusts of a character similar to the trust being administered and in effect when such compensation is payable.

(c)  Reasonable compensation for the services rendered and responsibilities assumed by each of such Trustee(s) in the administration of such Trust to be paid at reasonable intervals as incurred, with commencement and termination fees permitted only if agreed to by all of the Trustee(s) of such Trust in a written instrument approved by the Beneficiary of such Trust.

(d)  The employment of a person or firm and the payment of fees under Paragraph (a) above is specifically authorized notwithstanding the fact the person or firm so employed may be a Trustee or affiliated in business with any Trustee hereunder, provided the fees for the services rendered and responsibilities assumed in each capacity are reasonable and not duplicative.

**12.6  Power to Appoint Agent.** The Trustee is authorized to employ attorneys, accountants, investment managers, specialists, and such other agents as the Trustee shall deem necessary or desirable. The Trustee shall have the authority to appoint an investment manager or managers to manage all or any part of the assets of the Trust, and to delegate to said investment manager the discretionary power to acquire and dispose of assets of the Trust. The Trustee may charge the compensation of such attorneys, accountants, investment managers, specialists, and other agents against the Trust, including any other related expenses. Before a Trustee allows any agent to render billable services on behalf of the Trust he or she shall first provide for approval by an advanced written notice of at least fourteen (14) days of such agents' fees to the Trustor, during his lifetime, or following the death of the Trustor, to the beneficiaries of the Trust. Until such notice is provided and thereafter approved in writing by the Trustor or beneficiaries, no such agents shall receive any proposed fees for services rendered on behalf of the Trust.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 2008
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: *Bruce Michael Abrahamson*  *Elaine F. Abrahamson*

**12.7    Broad Powers of Distribution**.  After the death of the Trustor, upon any division or partial or final distribution of the Trust estate, the successor Trustee shall have the power to partition, all or portions of the Trust estate and to distribute the Trust estate in undivided interest or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such property as the Trustee, in the Trustee's discretion, considers necessary to make such division or distribution.  In making any division or partial or final distribution of the Trust estate, the Trustee shall be under no obligation to make a pro rata division or to distribute the same assets to beneficiaries similarly situated.  Rather, the Trustee may, in the Trustee's discretion, make non pro rata divisions between Trusts or shares and non pro rata distributions to beneficiaries as long as the respective assets allocated to separate trusts or shares or the distributions to beneficiaries have equivalent or proportionate fair market value.  The income tax basis of assets allocated or distributed non pro rata need not be equivalent and may vary to a greater or lesser amount, as determined by the Trustee, in his or her discretion, and no adjustment need be made to compensate for any difference in basis.

**12.8    Trustees' Liability**.  Except for the Trustees' own intentional and malicious breach of trust, bad faith, or gross negligence, the Trustees shall not be liable for any act, omission, loss, damage, or expense arising from the performance of the Trustees' duties under this Trust Agreement.  The Trustees shall not be liable for making any investments or purchases on behalf of the Trust, nor shall the Trustees be required in any way to diversify investments nor shall the Trustees in any way be required to sell or otherwise dispose of speculative or non-productive property or assets owned or acquired by the Trust.

**12.9    Indemnity**.  The Trustees (including the Distribution and Special Administrative Trustees) shall, from the Trust assets, both principal and income, be indemnified and held harmless from and against any and all loss, cost, expense, and damage (including any attorney's fees) subject to the restrictions of Section 10.10 incurred by the Trustees arising out of or in any way connected with this Trust, the administration thereof, or related to any assets contained herein or for any other reason whatsoever, except only as such may result from a Trustee's fraud, willful misconduct, or negligence.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated __02__ / __18__ / 20__08__
BRUCE  M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):                                    30
SIGNED: _Bruce Michael Abrahamson_ / _Elaine F. Abrahamson_

**12.10  Corporate Trustee.**  While there is a corporate Trustee acting, it shall have custody of all assets, books of account and records.

**12.11  Nondisclosure.**  Trustees shall be under no obligation to disclose the contents of the Trust estate to anyone other than as may be required by law or lawful court order or as required pursuant to Section 10.11 above.  Additionally, the Trustees shall be under no obligation to disclose the assets, investments, business, or affairs of this Trust.  Furthermore, Trustees, when convenient or necessary, shall give an abbreviated version of the Trust Agreement and/or a written memorandum of the pertinent provisions of this Trust to those persons needing such, so as to, for instance, open bank accounts, stock brokerage accounts, etc. or to title companies to show authority for Trustees to sell or purchase real estate.

**12.12  Undivided Interests.**  The principal of the trusts created by this Trust Agreement may consist of undivided interests in the same property, and the Trustees may administer such trusts as one fund.  The Trustees shall make a separate account for each of the separate trusts created under this Trust Agreement, but all of such trusts may be administered as a single fund. Joint investments or interests in investments may be assigned to such trusts, with each trust being credited with an undivided interest in all joint investments in the proportion which is assigned to it or in the proportion which its contribution to such investment bears to the whole.

**12.13  Separate Property.**  Any property held in trust and any income earned by the trusts created hereunder shall be the separate property (in distinction with community property, joint tenancy property, tenancy in common, marital property, quasi-community property or tenancy by the entirety) of the beneficiaries of such trusts.  Additionally, any distribution to or for the benefit of any beneficiary shall be and remain the sole and separate property and estate of the beneficiaries.

## ARTICLE 13

### ELECTING SMALL BUSINESS AND

### QUALIFIED SUBCHAPTER S TRUSTS

**13.1  QSS Trust.**  To the extent that any Trust created under this Instrument (for purposes of this Article an "Original Trust") owns or becomes the owner (or would but for this

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 20 08
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: Bruce Michael Abrahamson  Elaine F. Abrahamson

provision become the owner) of shares of stock of any then electing "S corporation" pursuant to Section 1361 et seq. of the Internal Revenue Code, or to the extent that any such Original Trust owns or becomes the owner of shares of stock of any "small business corporation" as defined in Section 1361(b) of the Internal Revenue Code with respect to which the Trustee desires to continue, make, or allow to be made an "S corporation" election, the Trustees of such Trust shall have the power at any time, in such Trustees' sole and absolute discretion, the exercise of which shall not be subject to review by any person or court, to terminate said Original Trust as to such shares of stock and to allocate, pay, and distribute (or cause to be allocated, paid, and distributed directly from any transferor) some or all of such shares of stock to a separate and distinct Qualified Subchapter S Trust, which Trust and Trust fund shall be designated with the name of the same Beneficiary with whose name the Original Trust is designated (such Beneficiary with whose name the Original Trust is designated being for purposes of this Article the "Beneficiary" of such trust) followed by the phrase **"QSS TRUST"** and shall be held pursuant to the same terms and conditions as the Original Trust, except that, notwithstanding any other provision in this Trust Indenture applicable to the Original Trust:

(a)    Until the death of the Beneficiary of the Qualified Subchapter S Trust, the Trustees of such Qualified Subchapter S Trust shall pay and distribute to such Beneficiary and to no other person all of the net income of the Qualified Subchapter S Trust annually or at more frequent intervals. Any and all income accrued, but not paid to the Beneficiary prior to the death of the Beneficiary, shall be paid to the estate of the Beneficiary. If more than one person had a present right to receive income distributions from the trust to which the "S Corporation" stock was originally allocated, then the Trustee shall have the authority to designate multiple current income beneficiaries and establish a separate Trust S for each such Beneficiary.

(b)    Any distribution of principal from a Qualified Subchapter S Trust may be made only to the Beneficiary then entitled to receive income from such trust.

(c)    Each Qualified Subchapter S Trust is intended to be a Qualified Subchapter S Trust, as defined in Section 1361 (d) of the Internal Revenue Code, as amended, or any successor provisions thereto. Accordingly, no Trustee of any Qualified Subchapter S Trust created pursuant to this Article shall have any power, the possession of which would cause any such Trust to fail to be a Qualified Subchapter S Trust; no power shall be exercisable in such a manner as to cause any such Trust to fail to be a Qualified Subchapter S Trust; and any ambiguity in this Trust Indenture shall be resolved in such a manner that each such trust shall be a Qualified Subchapter S Trust.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated  02 / 18 / 20 08
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED:  Bruce Michael Abrahamson / Elaine F. Abrahamson

(d)     The provisions of Articles 4 and 5 shall have no application to the distribution of income from any Qualified Subchapter S Trust created or continued pursuant to the provisions of this Article.

(e)     Any power provided in Articles 4 and 5 of this Trust Indenture may be exercised with respect to any Qualified Subchapter S Trust created pursuant to this Article, if and only if, or to the extent that, the exercise of any such power shall not violate the provisions of this Article and shall not impair or disqualify the Qualified Subchapter S Trust status of such trust.

(f)     Any reference in this instrument to any person, acting in an individual or fiduciary capacity, making an election for himself or for or on behalf of any person shall include, but not be limited to, an election made in accordance with Section 1361(d)(2) of the Code.

(g)     The Trustee hereunder shall characterize receipts and expenses of any QSS Trust in a manner consistent with qualifying that trust as a Qualified Subchapter S Trust.

(h)     The Trustee may not consolidate any trust with another if to do so would jeopardize the qualification of one or both of the trusts as Qualified Subchapter S Trusts.

(i)     If the continuation of any Qualified Subchapter S Trust created under this section would, in the opinion of the Trustee's legal counsel, result in the termination of the "S Corporation" status of any corporation whose stock is held as a part of the QSS Trust estate, the Trustee, in Trustee's sole discretion, shall have, in addition to the power to sell or otherwise dispose of such stock, the power to distribute the stock of such "S Corporation" to the person then entitled to receive the income therefrom.  Distribution of such stock in the manner herein provided shall relieve the Trustee of any further responsibility with respect to such "S Corporation" stock.  The Trustee shall have no liability for distributing or failing to distribute such stock as authorized by this section.

**13.2**    **ESB Trust**.  To the extent that any Trust created under this Instrument (for purposes of this Article an "Original Trust") owns or becomes the owner (or would but for this provision become the owner) of shares of stock of any then electing "S corporation" pursuant to Section 1361 et seq. of the Internal Revenue Code, or to the extent that any such Original Trust owns or becomes the owner of shares of stock of any "small business corporation" as defined in Section 1361(b) of the Internal Revenue Code with respect to which the Trustee desires to continue, make, or allow to be made an "S corporation" election, the Trustees of such Trust shall have the power at any time, in such Trustees' sole and absolute discretion, the exercise of which shall not be subject to review by any person or court, to terminate said Original Trust as to such

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated __02 / 18 / 2008__
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson/ Elaine F. Abrahamson_

shares of stock and to allocate, pay, and distribute (or cause to be allocated, paid, and distributed directly from any transferor) some or all of such shares of stock to a separate and distinct Electing Small Business ("ESB") Trust, which Trust and Trust fund shall be designated with the name of the same Beneficiary with whose name the Original Trust is designated (such Beneficiary with whose name the Original Trust is designated being for purposes of this Article the "Beneficiary" of such trust) followed by the phrase **"ESB TRUST"** and shall be held pursuant to the same terms and conditions as the Original Trust if the following conditions are met:

    (a)    If the Trustee determines it to be in the best interest of the Primary Beneficiary of any trust hereunder to elect status as an Electing Small Business Trust ("ESBT") pursuant to Code Section 1361 (c)(2)(A)(v);

    (b)    All beneficiaries of the trust for which the proposed ESBT election are qualified beneficiaries of an ESBT, as required pursuant to Code Section 1361(e)(1)(A)(i);

    (c)    There is no current election for the trust to be a Qualified Subchapter S Trust under 1361(d); and

    (d)    The Sub-Trust to be created by the ESBT election will otherwise qualify under all applicable Code provisions, regulations, and other applicable law, in which event the Trustee shall make all necessary elections to create a separate sub-trust, and following such election shall allocate any shares of stock of any then electing "S" Corporation to such ESB sub-trust.

    **13.3**    **Trustee's Discretion.**  The Trustee(s) of each trust shall have full discretion in making the QSST and/or ESBT elections as provided for in this Article, including the power to create both QSST and ESBT sub-trusts and allocate all or any portion of such stock in any manner between such sub-trusts; provided however, that during any time in which a Beneficiary is serving as sole Trustee of a trust of which he/she is a permissible Beneficiary, such Trustee/Beneficiary shall make one allocation only of Subchapter S stock to either the QSST or the ESBT, and once such allocation is made, such Trustee/Beneficiary shall not be permitted, acting alone, to thereafter change the election, with respect to any Subchapter S stock, in any way which would affect the beneficial enjoyment of income from any Subchapter S stock in any manner which might cause inclusion of such stock in the Trustee/Beneficiary's estate pursuant to Code Section 2036 or 2038 or any other applicable law. If a Trustee/Beneficiary is serving as a Co-Trustee of his/her trust, nothing herein shall prevent the non-Beneficiary Co-Trustee from

**OFFICIAL STAMP & DOCUMENT of the**
**BMA TRUST dated** 02 / 18 / 2008
**BRUCE M. ABRAHAMSON as TRUSTEE**
**AUTHORIZED SIGNATURE(S):** _Bruce Michael Abrahamson_ / _Elaine F. Abrahamson_
**SIGNED:**

making and changing the applicable QSST and ESBT elections with respect to any shares of stock of an electing "S corporation."

**13.4** **Effect on Beneficiaries.** In granting to the Trustee the discretion to create one or more Electing Small Business Trusts as herein provided, the Trustor recognizes that the interest of present or future beneficiaries may be increased or diminished upon the exercise of such discretion.

## ARTICLE 14

## MERGER OF TRUSTS

If at any time a Trustee of any Trust created pursuant to this Trust Agreement shall also be acting as Trustee of any other trust for the benefit of the same beneficiary or beneficiaries and upon substantially the same terms and conditions, the Trustee is authorized and empowered, if in the Trustee's discretion such action is in the best interest of the beneficiary or beneficiaries of the Trust created hereunder, to transfer and merge any part or all of the assets then held under such trust created pursuant to this instrument to and with such other trust. The Trustee's power of merger shall include the power to change the situs of the Trust, including the power to move the Trust situs outside the jurisdiction of the United States of America. The Trustee is further authorized to accept the assets of other trusts which may be transferred to the Trustee of the Trust created hereunder and to administer and distribute such assets and properties so transferred in accordance with the provisions of this instrument.

## ARTICLE 15

## PURPOSES OF TRUST

The purposes of the Trust are as follows:

(a)    maintain control of family assets;

(b)    consolidate fractional interests in family assets;

(c)    increase family wealth;

(d)    provide protection to family assets from claims of future creditors against family members;

(e)    prevent the transfer of family member's interest in the Trust as a result of a failed marriage;

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated _02_ / _18_ / 20_08_
BRUCE M. ABRAHAMSON as TRUSTEE[5]
AUTHORIZED SIGNATURE(S):
SIGNED: *Bruce Michael Abrahamson* / *Elaine F. Abrahamson*

(f)     provide flexibility in business planning not available through limited liability companies, corporations, or other business entities;

(g)    facilitate the administration and reduce the cost associated with the disability or probate of the estate of family members;

(h)    promote knowledge of and communication about family assets; and

(i)    to help protect the Trustor from unwise expenditures.

## ARTICLE 16

## GENERAL PROVISIONS

**16.1**  **Controlling Law**. This Trust Indenture is executed under the laws of the State of Nevada and shall in all respects be administered by the laws of the State of Nevada; provided, however, the Trust Consultant shall have the discretion, exercisable at any later time and from time to time, to change the governing law under which any trust created hereunder is administered to the laws of any domestic or foreign jurisdiction as the Trust Consultant sees fit, by executing a written instrument acknowledged before a notary public to that effect, and delivered to the then income beneficiaries. If the Trust Consultant exercises the discretion, as above provided, this Trust Indenture shall be administered from that time forth by the laws of the other state or jurisdiction.

**16.2**  **Spendthrift Provision**. No property (income or principal) distributable under this Trust Agreement, whether pursuant to Articles 3, 4, and 5 or otherwise, shall be subject to anticipation or assignment by any beneficiary, or to attachment by or of the interference or control of any creditor or assignee of any beneficiary or be taken or reached by any legal or equitable process in satisfaction of any debt or liability of any beneficiary, and any attempted transfer or encumbrance of any interest in such property by any beneficiary hereunder shall be absolutely and wholly void. No beneficiary or remainderman of any Trust shall have any right or power to sell, transfer, assign, pledge, mortgage, alienate, or hypothecate his or her interest in the principal or income of the Trust estate in any manner whatsoever. To the fullest extent of the law, the interest of each beneficiary and remainderman shall not be subject to the claims of any of his or her creditors or liable to attachment, execution, bankruptcy proceedings, or any other legal process. No beneficiary of any Trust created hereunder shall have any right or power to anticipate, pledge, assign, sell, transfer, alienate or encumber his or her interest in the Trust, in any way; nor shall any such interest in any manner be liable for or subject to the debts, liabilities,

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated _02_ / _18_ / 20 _08_
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_ _Elaine F. Abrahamson_

taxes or obligations of such beneficiary or claims of any sort against such beneficiary. The Trustee shall pay, disburse, and distribute principal and income of any trust only in the manner provided for in this Trust Agreement and will not make any attempted transfer or assignment, whether oral or written, to any appointee beneficiary or remainderman other than as herein provided. All Trusts created by this Trust Agreement shall be spendthrift Trusts as provided by the laws of the State of Nevada and shall be interpreted and operated so as to maintain such trusts as spendthrift trusts. Any beneficiary of any Trust created under this Trust Agreement may renounce or disclaim his or her interest in any Trust created under this Trust Agreement or any special or general power of appointment, in whole or in part, at any time; provided, however, such beneficiary shall not be treated as having died for the purpose of fiduciary appointments made in this Trust Agreement by reason of such disclaimer.

**16.3   Perpetuities Savings Clause.**   Notwithstanding anything to the contrary contained in this Trust agreement, the Trusts created herein, unless earlier terminated according to the terms of this Trust agreement, shall all terminate one (1) day less than three hundred and sixty-five (365) years after the execution date of this Trust. Upon such termination each Trust shall forthwith be distributed to the Beneficiaries of such Trust; provided however, that if no Beneficiary is then living, such property shall be distributed to those persons so designated in said Trust, as therein provided. Notwithstanding the foregoing, in the event any Trust created hereunder should be controlled and governed by the laws of any state which state has modified or repealed the common law Rule Against Perpetuities, then such modified Rule Against Perpetuities shall apply to such trust, and if the Rule Against Perpetuities shall have been repealed by the law of the governing state, then termination of any Trusts hereunder pursuant to the common law Rule Against Perpetuities shall not apply to any Trust which is, as a result, not subject to any such Rule Against Perpetuities, and all other references throughout this Trust Agreement to termination of any Trust hereunder pursuant to any applicable Rule Against Perpetuities shall not be applicable to such Trust or Trusts.

**16.4   No-Contest Provision.**   The Trustor specifically desires that this Trust Indenture and these Trusts created herein be administered and distributed without litigation or dispute of any kind. If any beneficiary of these Trusts or any other person, whether stranger, relative or heir, or any legatee or devisee under the Last Will and Testament of the Trustor or the

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated __02 / 18 / 2008__
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_  _Elaine F. Abrahamson_

successors-in-interest of any such persons, including Trustor's estate under the intestate laws of the State of Nevada or any other state lawfully or indirectly, singly or in conjunction with another person, seek or establish to assert any claim or claims to the assets of these Trusts established herein, or attack, oppose or seek to set aside the administration and distribution of the Trusts, or to invalidate, impair or set aside its provisions, or to have the same or any part thereof declared null and void or diminished, or to defeat or change any part of the provisions of the Trusts established herein, then in any and all of the abovementioned cases and events, such person or persons shall receive One Dollar ($1.00), and no more, in lieu of any interest in the assets of the Trusts or interest in income or principal.

16.5   <u>Provision For Others</u>.  The Trustor has, except as otherwise expressly provided in this Trust Indenture, intentionally and with full knowledge declined to provide for any and all of his heirs or other persons who may claim an interest in his respective estates or in these Trusts.

16.6   <u>Severability</u>.  In the event any clause, provision or provisions of this Trust Indenture prove to be or be adjudged invalid or void for any reason, then such invalid or void clause, provision or provisions shall not affect the whole of this instrument, but the balance of the provisions hereof shall remain operative and shall be carried into effect insofar as legally possible.

16.7   <u>Distribution of Small Trust</u>.  If the Trustee, in the Trustee's absolute discretion, determines that the amount held in Trust is not large enough to be administered in Trust on an economical basis, then the Trustee may distribute the Trust assets free of Trust to those persons then entitled to receive the same.

16.8   <u>Headings</u>.  The various clause headings used herein are for convenience of reference only and constitute no part of this Trust Indenture.

16.9   <u>More Than One Original</u>.  This Trust Indenture may be executed in any number of copies and each shall constitute an original of one and the same instrument.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated _02_ / _18_ / _2008_
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_  38  _Elaine F. Abrahamson_

16.10 **Interpretation**. Whenever it shall be necessary to interpret this Trust, the masculine, feminine and neuter personal pronouns shall be construed interchangeably, and the singular shall include the plural and the singular.

16.11 **Definitions**. The following words are defined as follows:

    (a)    **"Principal" and "Income"**. Except as otherwise specifically provided in this Trust Indenture, the determination of all matters with respect to what is principal and income of the Trust estate and the apportionment and allocation of receipts and expenses thereon shall be governed by the provisions of Nevada's Revised Uniform Principal and Income Act, as it may be amended from time to time and so long as such Act does not conflict with any provision of this instrument; provided, however, that as used herein, the term "Trust income" for any taxable year shall also include the net amount received in such taxable year for the sale or exchange of capital assets. Notwithstanding such Act, no allowance for depreciation shall be charged against income or net income payable to any beneficiary.

    (b)    **"Education"**. Whenever provision is made in this Trust Indenture for payment for the "education" of a beneficiary, the term "education" shall be construed to include technical or trade schooling, college or postgraduate study, so long as pursued to advantage by the beneficiary at an institution of the beneficiary's choice and in determining payments to be made for such college or postgraduate education, the Trustees shall take into consideration the beneficiary's related living and traveling expenses to the extent that they are reasonable.

    (c)    **"Child, Children, Descendants or Issue"**. As used in this instrument, the term "descendants" or "issue" of a person means all of that person's lineal descendants of all generations. The terms "child, children, descendants or issue" include adopted persons, but do not include a step-child or step-grandchild, unless that person is entitled to inherit as a legally adopted person.

16.12 **Court Instructions**. The Trustee may seek the assistance of the Courts in all matters affecting the administration of this Trust or its properties, including advice on the interpretation of the Trust or for settlement of any account by invoking the jurisdiction of any District Court with jurisdiction (including quasi-in-rem jurisdiction) over the Trust, the Trustee, or the Trust res, in a nonadversary ex parte proceeding. The decision of the Court shall be binding upon all interested parties who were given written mailing notice of the proceedings to their last known address.

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated __02__ / __18__ / 20__08__
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson / Elaine F. Abrahamson_

SIGNED AND SEALED by the Trustor and Trustees on the day and year first above written.

TRUSTOR:

_BRUCE MICHAEL ABRAHAMSON_
BRUCE MICHAEL ABRAHAMSON

INVESTMENT TRUSTEE:

_Bruce M. Abrahamson_
BRUCE M. ABRAHAMSON

DISTRIBUTION TRUSTEE:

_Elaine F. Abrahamson_
ELAINE F. ABRAHAMSON

SPECIAL ADMINISTRATIVE TRUSTEE:

_____
DAVID M. GRANT, ESQ

STATE OF ILLINOIS    )
                     ) ss.
COUNTY OF Cook       )

On this 18th day of February, 2008, personally appeared before me, a Notary Public in and for said County of Cook, State of Illinois, BRUCE MICHAEL ABRAHAMSON, personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Karen Mabry_
NOTARY PUBLIC

OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated 02 / 18 / 2008
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED: _Bruce Michael Abrahamson_
_Elaine F. Abrahamson_

40

*OFFICIAL SEAL*
Karen Mabry
Notary Public State of Illinois
My Commission Expires Jan. 12, 2010

STATE OF ILLINOIS )
                       ) ss.
COUNTY OF  ᑕ<u>ᑕᔑᛕ</u>  )

On this <u>18th</u> day of February, 2008, personally appeared before me, a Notary Public in and for said County of <u>ᑕᔑᛕᔑ</u>, State of Illinois, ELAINE F. ABRAHAMSON, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

<u>Karen Mabry</u>
NOTARY PUBLIC

"OFFICIAL SEAL"
Karen Mabry
Notary Public, State of Illinois
My Commission Expires Jan 12, 2010

STATE OF NEVADA )
                       ) ss.
COUNTY OF CLARK )

On this <u>3ro</u> day of ~~February~~ MARCH, 2008, personally appeared before me, a Notary Public in and for said County of Clark, State of Nevada, DAVID M. GRANT, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument, the person, or the entity upon behalf of which the person acted, executed the instrument.

Notary Public - State of Nevada
COUNTY OF CLARK
DELWYN E. WEBBER
No. 06-102394-1 My Appointment Expires Feb 7, 2010

**APPROVED**

BY: _____
David M. Grant, Esq.
2600 Paseo Verde Parkway
Henderson, Nevada 89074

WITNESS my hand and official seal.

_____
NOTARY PUBLIC

**OFFICIAL STAMP & DOCUMENT of the
BMA TRUST dated <u>02</u> / <u>18</u> /20<u>08</u>
BRUCE M. ABRAHAMSON as TRUSTEE
AUTHORIZED SIGNATURE(S):
SIGNED:** *Bruce Michael Abrahamson*
*Elaine F. Abrahamson*

41